# ORIGINAL

FILED IN CHAMBERS
U.S.D.C. Atlanta

SEP 0 7 2006

JAMES N. HATTEN, Clerk
By: _Angela A. Smith_
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL INDICTMENT |
| v. | : | |
| | : | NO. **1:06CR382** |
| JARED ROBERT WHEAT | : | |
| STEPHEN D. SMITH | : | |
| TOMASZ HOLDA | : | **UNDER SEAL** |
| SERGIO OLIVEIRA | : | |
| DAVID BRADY | : | |
| DAVID JOHNSON | : | |
| DAVID WATKINS | : | |
| BRAD WATKINS | : | |
| STEVEN BLINDER | : | |
| MICHELE YOUNG | : | |
| GUILLERMO PECH | : | |
| HI-TECH PHARMACEUTICALS, INC. | : | |
| d/b/a Planet Pharmacy, Target | : | |
| Data, Target Data Processing, | : | |
| Pegasus Resources, Global | : | |
| Pharmacy and Generic Limited | : | |

THE GRAND JURY CHARGES THAT:

## INTRODUCTION

At all times relevant to this Indictment:

### CONTROLLED SUBSTANCES ACT

1. The Controlled Substances Act governed the manufacture, distribution, and dispensing of controlled substances in the United States.

2. Various prescription drugs were scheduled substances under the Controlled Substances Act. There were five schedules of controlled substances – schedules I, II, III, IV, and V. Drugs

were scheduled into these levels based on their potentiality for abuse, among other things. Abuse of Schedule III drugs may lead to moderate or low physical dependence or high psychological dependence. Abuse of Schedule IV drugs may lead to more limited physical dependence or psychological dependence relative to the drugs or other substances in Schedule III. 21 U.S.C. §§ 812(b)(3) and (4).

3. Title 21, Code of Federal Regulations, Section 1306.04(a) provided:

> A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

4. Oxandrolone, an anabolic steroid, was classified under federal narcotics laws as a Schedule III controlled substance. 21 C.F.R. § 1308.13(f). Anavar® was a brand name for a prescription

2

drug that contained oxandrolone, and was therefore classified as a Schedule III controlled substance.

5. Oxymetholone, an anabolic steroid, was classified under federal narcotics laws as a Schedule III controlled substance. 21 C.F.R. § 1308.13(f). Anadrol® was a brand name for a prescription drug that contained oxymetholone, and was therefore classified as a Schedule III controlled substance.

6. Stanazolol, an anabolic steroid, was classified under federal narcotics laws as a Schedule III controlled substance. 21 C.F.R. § 1308.13(f). Winstrol® was a brand name for a prescription drug that contained stanazolol, and was therefore classified as a Schedule III controlled substance.

7. Alprazolam, a depressant, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(c)(1). Xanax®, a prescription drug used to treat anxiety, contained alprazolam, and was therefore classified as a Schedule IV controlled substance.

8. Diazepam, a depressant, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(c)(14). Valium®, a prescription drug used to treat anxiety, contained diazepam, and was therefore classified as a Schedule IV controlled substance.

3

9.    Lorazepam, a depressant, was classified under federal narcotics laws as a Schedule IV controlled substance.  21 C.F.R. § 1308.14(c)(27).    Ativan®, a prescription drug used to treat anxiety, contained lorazepam, and was therefore classified as a Schedule IV controlled substance.

10.    Phentermine, a stimulant, was classified under federal narcotics laws as a Schedule IV controlled substance.  21 C.F.R. § 1308.14(e)(9).

11.    Zolpidem tartrate, a depressant, was classified under federal narcotics laws as a Schedule IV controlled substance.  21 C.F.R. § 1308.14(c)(50).  Ambien®, a prescription drug used to treat insomnia, contained zolpidem, and was therefore classified as a Schedule IV controlled substance.

## THE FEDERAL FOOD, DRUG, AND COSMETIC ACT

12.    The United States Food and Drug Administration ("FDA") was the agency of the United States charged with the responsibility of protecting the health and safety of the American public by assuring, among other things, that drugs sold to humans were safe and effective for their intended uses and bore labeling containing true and accurate information.    FDA's responsibilities included regulating the labels, labeling, distribution, and manufacture of prescription drugs shipped or received in interstate commerce.

4

13. FDA was also responsible for, among other things, enforcing the provisions of the Federal Food, Drug, and Cosmetic Act ("FD&C Act"), 21 U.S.C. § 301 et seq.

14. Under the FD&C Act, the term "drug" included articles which were (1) intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man; or (2) intended to affect the structure or any function of the body of man. 21 U.S.C. §§ 321(g)(1)(B) and (C).

15. Some of the drugs regulated under the FD&C Act were "prescription drugs." "Prescription drugs" were those drugs, which because of their toxicity or other potentiality for harmful effect, or the method of their use, or the collateral measures necessary for their use, were not safe for use except under the supervision of a practitioner licensed by law to administer such drugs, or which were required to be administered under the professional supervision of a practitioner licensed by law to administer such drug as a condition of FDA approving the drug pursuant to 21 U.S.C. § 355 to be placed on the market. 21 U.S.C. §§ 353(b)(1)(A) and (B).

Under the FD&C Act, the act of dispensing a prescription drug without a valid prescription from a practitioner licensed by law to administer such drug resulted in the drug being misbranded while held for sale. 21 U.S.C. § 353(b)(1)(B).

5

The FD&C Act prohibited the doing of any act with respect to a drug and causing any act to be done with respect to a drug, if such act was done while such drug was held for sale (whether or not the first sale) after shipment in interstate commerce and resulted in such drug being misbranded. The FD&C Act prohibited the introduction, delivery for introduction, or causing the introduction or delivery for introduction into interstate commerce of any misbranded drug. 21 U.S.C. § 331(a).

A drug was misbranded under the FD&C Act if, among other things: its labeling was false or misleading in any particular see 21 U.S.C. § 352(a); the labeling on the drug did not bear adequate directions for use, see 21 U.S.C. § 352 (f)(1); and the labeling on the drug did not bear such adequate warnings against use in those pathological conditions, and by children where its use may be dangerous to health, and against unsafe dosage and methods and duration of administration and application, in such manner and form, as were necessary for the protection of users. 21 U.S.C. § 352(f)(2).

The term "label" was defined in the FD&C Act as a display of written, printed, or graphic matter upon the immediate container of any article. 21 U.S.C. § 321 (k). The term "labeling" was defined in the FD&C Act as all labels and other printed or graphic matter (a) upon any article or any of its containers or wrappers, or (b)

6

accompanying such article. 21 U.S.C. § 321(m). Labeling was given a broad meaning under the FDCA to include printed or graphic matter that does not physically accompany the shipment of the drug.

"Adequate directions for use" was defined by regulation to mean "directions under which the layman can use a drug safely and for the purposes for which it is intended." See 21 C.F.R. § 201.5. The "intended use" of a drug referred "to the objective intent of the persons legally responsible for the labeling of drugs." See 21 C.F.R. § 201.128. "The intent is determined by such persons' expressions or may be shown by the circumstances surrounding the distribution of the article[,]" and "may, for example, be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives." Id.

16. Atorvastatin, sold in the United States as Lipitor®, was indicated for the treatment of high cholesterol, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

17. Celecoxib, sold in the United States as Celebrex®, was indicated for the treatment of the pain, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

18. Clobenzorex was indicated for the treatment of weight loss, but was not sold in the United States. It was a prescription

7

drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

19. Clomiphene, sold in the United States as Clomid®, was indicated for the treatment as a fertility drug, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

20. Esomeprazole, sold in the United States as Nexium®, was indicated for the treatment of gastroesophogeal reflux disease, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

21. Lovastatin, sold in the United States as Mevacor®, was indicated for the treatment of high cholesterol, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

22. Rofecoxib, was sold in the United States as Vioxx®, was indicated for the treatment of pain, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

23. Setraline, sold in the United States as Zoloft®, was indicated for the treatment of depression, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

8

24.   Sildenafil citrate, sold in the United States as Viagra®, was indicated for the treatment of erectile dysfunction, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

25.   Tadalafil, sold in the United States as Cialis®, was indicated for the treatment of erectile dysfunction, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

26.   Tamoxifen, sold in the United States as Nolvadex®, was indicated for the treatment of breast cancer, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

27.   Vardenafil, sold in the United States as Levitra®, was indicated for the treatment of erectile dysfunction, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

28.   Oxandrolone   (Anavar®),   Oxymetholone   (Anadrol®), Stanazolol, Alprazolam (Xanax®), Diazepam (Valium®), Lorazepam (Ativan®), Phentermine, and Zolpidem (Ambien®), described as controlled substances in paragraphs 4-11 above, were also prescription drugs within the meaning of Title 21, United States Code, Sections 353(b)(1)(A) and (B).

29.  Under the FD&C Act, a "new drug" could not be distributed in interstate commerce unless the person who sought to distribute the drug demonstrated to the satisfaction of the FDA that the drug was safe and effective for each of its intended uses, and there was in effect for such drug an approval of a new drug application (NDA) pursuant to 21 U.S.C. § 355 (b), or an abbreviated new drug application (ANDA) pursuant to 21 U.S.C. § 355(j), or an investigational new drug (IND) submission pursuant to 21 U.S.C. § 3555(i).  21 U.S.C. §§ 355(a), (d), 331 (d).

Under the FD&C Act, a "new drug" meant any drug the composition of which is such that the drug is not generally recognized among experts as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof.  21 U.S.C. § 321 (p)(1).

### DEFENDANTS

30.  Defendant HI-TECH PHARMACEUTICALS, INC., d/b/a Planet Pharmacy, Target Data, Target Data Processing, Planet Pharmacy, Pegasus Resources, Global Pharmacy, and Generic Limited ("HI-TECH") was a company based in Norcross, Georgia, within the Northern District of Georgia, whose business included the illegal importation of prescription drugs, including controlled substances, and other controlled substances for distribution and sale in the

United States.  From its headquarters, HI-TECH ran a manufacturing and distribution center in Belize.  HI-TECH manufactured, marketed, imported into the United States, and distributed various "generic" versions of prescription drugs and other controlled substances. HI-TECH also maintained and marketed various websites from which individuals in the United States were able to order the prescription drugs and controlled substances from HI-TECH.

31.  Defendants JARED ROBERT WHEAT, STEPHEN D. SMITH, TOMASZ HOLDA were three of the persons who formed, owned and operated Defendant HI-TECH.

32.  Defendants SERGIO OLIVEIRA, DAVID BRADY, DAVID JOHNSON, DAVID WATKINS, and BRAD WATKINS were employed by and worked for HI-TECH in the United States in various capacities, including marketing, sales and distribution of drugs and controlled substances.

33.  Defendants MICHELE YOUNG and GUILLERMO PECH were employed by HI-TECH to operate the Belize manufacturing and distribution center.

34.  Defendant STEVEN BLINDER assisted the other individual defendants in manufacturing drugs in Belize and also distributed such drugs in the United States.

11

**COUNT ONE**
**(18 U.S.C. § 371)**
**(Conspiracy)**

35.    The Grand Jury realleges and incorporates by reference herein, Paragraphs 1 through 34 of this Indictment.

36.    From in or about July 2000 and continuing through in or about October 2004, in the Northern District of Georgia and elsewhere, the defendants

**JARED ROBERT WHEAT**
**STEPHEN D. SMITH**
**TOMASZ HOLDA**
**SERGIO OLIVEIRA**
**DAVID BRADY**
**DAVID JOHNSON**
**DAVID WATKINS**
**BRAD WATKINS**
**STEVEN BLINDER**
**MICHELE YOUNG**
**GUILLERMO PECH**
**HI-TECH PHARMACEUTICALS, INC.,**
**d/b/a Planet Pharmacy, Target**
**Data, Target Data Processing,**
**Pegasus Resources, Global**
**Pharmacy and Generic Limited**

and others known and unknown to the Grand Jury, did willfully and knowingly combine, conspire, confederate, agree and have a tacit understanding with each other and others known and unknown to the Grand Jury to commit certain offenses against the United States, namely:

A.    To knowingly devise and intend to devise a scheme and artifice to defraud individuals seeking prescription

12

drugs and to obtain money from said individuals by means of material false and fraudulent pretenses, promises, and representations, and to cause items to be mailed in the United States Mails and by private interstate commercial carrier in furtherance of said scheme and artifice to defraud in violation of Title 18, United States Code, Section 1341;

B.   To knowingly devise and intend to devise a scheme and artifice to defraud individuals seeking prescription drugs and to obtain money from said individuals by means of material false and fraudulent pretenses, promises, and representations, and to cause interstate wire communications to be made in furtherance of said scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343;

C.   To introduce and deliver for introduction into interstate commerce, and to cause the introduction and delivery for introduction into interstate commerce unapproved new drugs with the intent to defraud and mislead, in violation of Title 21, United States Code, Sections 331(d), 333(a)(2) and 355(a); and

D.   To introduce and deliver for introduction into interstate commerce, and to cause the introduction and delivery for

13

introduction into interstate commerce of adulterated drugs with the intent to defraud and mislead, in violation of Title 21, United States Code, Sections 331(a), 333(a)(2) and 351.

MANNER AND MEANS

37.  It was part of the conspiracy that defendants would send unsolicited commercial e-mails ("spam") to various e-mail accounts directing the recipients of the spam to visit websites such as canadiangenerics.com to purchase purported high-quality generic versions of popular patented prescription drugs, which were allegedly made using good manufacturing practices in Canada, at prices substantially lower than the patented versions of the drugs.

38.  It was further part of the conspiracy that defendants would operate internet sites, including canadiangenerics.com, genericviagra.bz, genericpharmacy.bz, pharmacy.bz, targetdata.bz and planetpharmacy.bz, which offered prescription drugs and other controlled substances for sale without a prescription.  The websites falsely stated that these drugs would be imported from Canada, falsely stated that all pharmaceuticals purchased via the website were manufactured using good manufacturing practices, and falsely stated that a licensed medical doctor would review the on-line questionnaire for the drugs.

14

39.  It was further part of the conspiracy that defendants would manufacture such drugs in Belize in non-sterile conditions and without using good manufacturing practices.  Defendants manufactured and imported into the United States various prescription drugs and controlled substances, including:

| GENERIC NAME | BRAND NAME |
|---|---|
| | |
| Schedule III Controlled Substances (Steroids) | |
| Oxandrolone | Anavar |
| Oxymetholone | Anadrol |
| Stanazolol | Winstrol |
| | |
| Schedule IV Controlled Substances | |
| Alprazolam | Xanax |
| Diazepam | Valium |
| Lorazapam | Ativan |
| Phentermine | |
| Zolpidem | Ambien |
| | |
| Prescription Drugs | |
| Atorvastatin | Lipitor |
| Celecoxib | Celebrex |
| Clobenzorex | Clobenzorex |
| Clomiphene | Clomid |

| GENERIC NAME | BRAND NAME |
|---|---|
| **Prescription Drugs (continued)** | |
| Esomeprazole | Esomeprazole |
| Lovastatin | Mevacor |
| Rofecoxib | Vioxx |
| Setraline | Zoloft |
| Sildenafil Citrate | Viagra |
| Tadalafil | Cialis |
| Tamoxifen | Nolvadex |
| Vardenafil | Levitra |

40. It was further part of the conspiracy that defendants would send these drugs from Belize to internet customers in the United States via the U.S. mails and private commercial interstate carriers.

41. It was further part of the conspiracy that defendants would also sell the drugs to wholesalers, including defendant STEVEN BLINDER, who would then resell the drugs to their own customers.

OVERT ACTS

42. In furtherance of said conspiracy and to effect and accomplish the objects thereof, the following overt acts, among

16

others, were committed in the Northern District of Georgia and elsewhere:

A.  On or about September 20, 2001, defendant MICHELE YOUNG registered the website www.planetpharmacy.bz on behalf of defendant HI-TECH.

B.  On or about November 5, 2001, defendants MICHELLE YOUNG and GUILLERMO PECH faxed a letter to Universal Customs Brokers (UCB) to engage UCB to handle brokerage services for defendant HI-TECH, d/b/a Target Data Processing, Ltd.

C.  On or about November 29, 2001, defendant HI-TECH in the Northern District of Georgia ordered 50 kilograms of Phentermine HCL to be shipped to Belize.

D.  On or about February 21, 2002, defendants HI-TECH in the Northern District of Georgia and MICHELLE YOUNG in Belize caused a blending machine, approximately 100,000 bottles/caps/seals and other pill making equipment to be sent to HI-TECH's location in Belize.

E.  On or about March 18, 2002, defendant JARED WHEAT in the Northern District of Georgia ordered pill dies to be shipped to defendant HI-TECH's location in Belize.

F.  On or about March 20, 2002, defendant JARED WHEAT prepared formula cards for mixing and manufacturing Viagra.

17

G.    On or about March 21, 2002, defendant JARED WHEAT sent an e-mail stating that he was making fake Viagra in Belize.

H.    On or about July 2, 2002, defendant JARED WHEAT sent a fax from defendant HI-TECH in the Northern District of Georgia to a bank in Belize directing a transfer of $50,000 from a defendant HI-TECH account to a Target Data, Ltd. account.

I.    In or around August 2002, defendant HI-TECH in the Northern District of Georgia ordered additional pill punches and dies to be shipped to Belize.

J.    On or about October 11, 2002, defendant JARED WHEAT faxed a document to New Chemic confirming the order of 5 kilograms of oxandrolone to be shipped to defendant HI-TECH's facility in Belize.

K.    On or about October 15, 2002, defendant JARED WHEAT in the Northern District of Georgia wired $92,500 to New Chemic to pay for 5 kilograms of oxandrolone.

L.    On or about October 22, 2002, defendant GUILLERMO PECH in Belize sent a fax to defendant JARED WHEAT in the Northern District of Georgia reporting on filled orders.

M.    On or about October 29, 2002, defendant GUILLERMO PECH in Belize sent a fax to defendant JARED WHEAT in the Northern District of Georgia regarding payment of bills.

N.   On or about December 4, 2002, defendant HI-TECH in the Northern District of Georgia ordered additional pill punches and dies to be shipped to Belize.

O.   On or about February 19, 2003, defendant HI-TECH in the Northern District of Georgia caused a pill press, a pill counting machine and other items used to make pills to be shipped to defendant HI-TECH's facility in Belize.

P.   On or about April 3, 2003, defendant JARED WHEAT in the Northern District of Georgia ordered 10 kilograms of Alprazolam and 10 kilograms of Zolpidem to be shipped to defendant HI-TECH's facility in Belize.

Q.   On or about April 7, 2003, defendant JARED WHEAT caused a wire transfer of $26,500 from Belize to New Jersey to pay for the drugs identified in Paragraph P, above.

R.   On or about April 15, 2003, defendant STEVEN BLINDER ordered 175,000 pills of various types from defendant HI-TECH.

S.   On or about June 2, 2003, defendant JARED WHEAT and defendant HI-TECH in the Northern District of Georgia paid $96,075 to New Chemic for raw materials to be shipped to Belize.

T.   In or around August 2003, defendants STEPHEN D. SMITH and TOMASZ HOLDA traveled from the Northern District of Georgia to Belize.

U.   On or about September 29, 2003, defendant JARED WHEAT in the Northern District of Georgia ordered and paid for a shipment of

19

50 kilograms of Phentermine HCL to be shipped to defendant HI-TECH's facility in Belize.

V. In or around October 2003, defendant TOMASZ HOLDA traveled from the Northern District of Georgia to Belize.

W. On or about October 16, 2003, defendant DAVID JOHNSON sent an e-mail to defendant GUILLERMO PECH in Belize providing him with information on encrypting documents to exchange between them.

X. On or about October 20, 2003, defendant DAVID JOHNSON sent an e-mail to defendants MICHELE YOUNG and GUILLERMO PECH in Belize providing them with information on encrypting documents to exchange between them.

Y. On or about October 22, 2003, defendant DAVID JOHNSON sent an e-mail to defendant MICHELE YOUNG in Belize regarding a customer who was incorrectly charged.

Z. On or about November 14 and November 23, 2003, defendant DAVID BRADY directed defendant HI-TECH customer service employees to send an e-mail to customers indicating that 820 orders were lost and needed to be re-sent. Defendant DAVID BRADY directed that a fictitious name be identified as the customer support representative sending the e-mail to customers.

AA. On or about November 29, 2003, defendant DAVID WATKINS sent an e-mail to "consumercare@planetpharmacy.bz" indicating a mistake that needed to be changed on one of defendant HI-TECH's websites.

BB.  In or around December 2003, defendants STEPHEN D. SMITH, JARED WHEAT, TOMASZ HOLDA, and BRAD WATKINS traveled from the Northern District of Georgia to Belize.

CC.  On or about December 22, 2003, defendant GUILLERMO PECH sent an e-mail to defendant DAVID JOHNSON attaching a fax to be sent by defendant DAVID BRADY to a Belize bank to prepare refund checks for various customers.

DD.  On or about January 17, 2004, defendant DAVID WATKINS traveled from the Northern District of Georgia to Belize.

EE.  In or around February 2004, defendant DAVID WATKINS traveled from the Northern District of Georgia to Belize.

FF.  In or around March 2004, defendants STEPHEN D. SMITH, JARED WHEAT, TOMASZ HOLDA, and BRAD WATKINS traveled from the Northern District of Georgia to Belize.

GG.  In or about March 19, 2004, defendant BRAD WATKINS sent samples of drugs, including Alprazolam, Clomiphene, Diazepam, Lorazepam, Oxandrolone, Phentermine, Stanazolol, and Zolpidem to a potential buyer in California.

HH.  In or around April 2004, defendant JARED WHEAT in the Northern District of Georgia ordered pharmaceutical ingredients to be shipped to Belize.

II.  On or about April 14, 2004, defendant JARED WHEAT traveled from the Northern District of Georgia to Belize.

21

JJ.  On or about April 14, 2004, defendant JARED WHEAT deposited $850,567.98 that he withdrew from a bank in the Northern District of Georgia into a Belize bank account controlled by defendants JARED WHEAT and HI-TECH.

KK.  On or about April 26, 2004, defendant TOMASZ HOLDA in the Northern District of Georgia wrote a check to New Chemic to pay for Alprazolam and Zolpidem to be shipped to defendant HI-TECH's facility in Belize.

LL.  On or about April 29, 2004, defendant TOMASZ HOLDA in the Northern District of Georgia wrote a check to Americhem to pay for pharmaceutical ingredients to be shipped to defendant HI-TECH's facility in Belize.

MM.  In or around May 14, 2004, defendant STEPHEN D. SMITH traveled from the Northern District of Georgia to Belize.

NN.  On or about May 15, 2004, defendant STEVEN BLINDER ordered 163,326 pills of various types from defendant HI-TECH.

OO.  On or about June 2, 2004, defendant TOMASZ HOLDA in the Northern District of Georgia ordered 40 boxes of plastic bags of the same type used to package drugs in defendant HI-TECH's facility in Belize.

PP.  On or about June 23, 2004, defendant STEVEN BLINDER ordered 17,200 pills of various types from defendant HI-TECH.

QQ.  On or about June 29, 2004, defendant JARED WHEAT sent a letter to a bank in Belize directing a wire transfer of $60,000 to RIA International, LLC to pay for raw materials.

RR.  On or about July 2, 2004, defendant MICHELLE YOUNG sent documents via Federal Express to defendant STEVEN D. SMITH at defendant HI-TECH's the Northern District of Georgia headquarters.

SS.  On or about September 17, 2004, defendant JARED WHEAT in the Northern District of Georgia directed that a defendant HI-TECH bank account in Belize be closed and the money in the count, $1,712,177.14, be wired to a bank in Panama.

TT.  On or about September 28, 2004, defendants JARED WHEAT and TOMASZ HOLDA in the Northern District of Georgia paid for 10 kilograms of Atorvastatin and 10 kilograms of Paroxetine to be shipped to defendant HI-TECH's facility in Belize.

All in violation of Title 18, United States Code, Section 371.

### COUNT TWO
### (21 U.S.C. § 963)
### (Conspiracy)

43.  The Grand Jury realleges and incorporates by reference herein, Paragraphs 1 through 42 of this Indictment.

44.  From in or about July 2000 and continuing through in or August 2004, in the Northern District of Georgia and elsewhere, the defendants

23

JARED ROBERT WHEAT
STEPHEN D. SMITH
TOMASZ HOLDA
SERGIO OLIVEIRA
DAVID BRADY
DAVID JOHNSON
DAVID WATKINS
BRAD WATKINS
STEVEN BLINDER
MICHELE YOUNG
GUILLERMO PECH
HI-TECH PHARMACEUTICALS, INC.,
d/b/a Planet Pharmacy, Target
Data, Target Data Processing,
Pegasus Resources, Global
Pharmacy and Generic Limited

did knowingly and intentionally combine, conspire, confederate, agree and have a tacit understanding with each other and others known and unknown to the Grand Jury to violate Title 21, United States Code, Sections 952(a)(2) and 960(a)(1), that is, to knowingly and intentionally import and attempt to import into the United States from Belize anabolic steroids, Schedule III narcotic controlled substances, and to knowingly and intentionally import and attempt to import into the United States from Belize Schedule IV narcotic controlled substances, that is, Alprazolam, Diazepam, Lorazapam, Phentermine and Zolpidem, other than for a legitimate medical purpose and not in the course of professional practice, all in violation of Title 21, United States Code, Sections 952(a)(2), 960(a)(1), 960(b)(4), and 963.

24

## COUNT THREE
### (21 U.S.C. § 848)
### (Continuing Criminal Enterprise)

45.  The Grand Jury realleges and incorporates by reference herein, Paragraphs 1 through 42 of this Indictment.

46.  Beginning on a date unknown to the Grand Jury and continuing through on or about September 28, 2004, in the Northern District of Georgia and elsewhere, the defendant, JARED ROBERT WHEAT, did knowingly and intentionally engage in a continuing criminal enterprise, in that defendant JARED ROBERT WHEAT

(a)  knowingly and intentionally violated Title 21, United States Code Sections 841(a), 846, 952 and 963 as alleged in Count 2 and Counts 34 through 43 of this Indictment, which Counts are incorporated herein by reference, and that defendant JARED ROBERT WHEAT knowingly and intentionally violated Title 21, United States Code Section 841(a) by possessing, and attempting to possess, with intent to distribute GHB, a Schedule I controlled substance, and GBL, a List I chemical, from in or about March 2000 through in or about January 2001, which violations were part of a continuing series of violations of subchapters I and II of the Drug Abuse and Control Act of 1970; and

(b)  undertook such violations described in paragraph (a) in concert with at least five other persons, known and unknown to the Grand Jury, with respect to whom Defendant JARED ROBERT WHEAT occupied a position of organizer, supervisor and manager; and

(c) obtained substantial income and resources from the violations described in paragraphs (a) and (b);

all in violation of Title 21, United States Code, Sections 848(a) and 848(c).

### COUNTS FOUR THROUGH THIRTEEN
### (18 U.S.C. § 1341)
### (Mail Fraud)

47.  The Grand Jury realleges and incorporates by reference herein, Paragraphs 1 through 42 of this Indictment.

48.  On or about the dates set forth below in Column A, in the Northern District of Georgia and elsewhere, defendants

**JARED ROBERT WHEAT**
**STEPHEN D. SMITH**
**TOMASZ HOLDA**
**SERGIO OLIVEIRA**
**DAVID BRADY**
**DAVID JOHNSON**
**MICHELE YOUNG**
**GUILLERMO PECH**
**HI-TECH PHARMACEUTICALS, INC.**
**d/b/a Planet Pharmacy, Target**
**Data, Target Data Processing,**
**Pegasus Resources, Global**
**Pharmacy and Generic Limited**

aided and abetted by each other and others known and unknown to the Grand Jury, and for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud, did knowingly cause to be sent and delivered the drugs referenced in Column B by the United States Postal Service and private interstate commercial carrier to the places identified in Column C:

26

| COUNT | DATE OF MAILING | PURPORTED PHARMACEUTICALS | RECIPIENT/ADDRESS |
|---|---|---|---|
| 4 | 8/8/02 | Viagra (15 pills) | 20410 40th Ave. Ct. E<br>Apt 1A<br>Spanaway, WA 98387-6704 |
| 5 | 2/11/04 | Phentermine (30 pills) | 14625 Baltimore Avenue,<br>Apt. 298<br>Laurel, MD 20707 |
| 6 | 2/11/04 | Phentermine (30 pills) | 1259 Fairlake Trace,<br>#206<br>Weston, FL 33226 |
| 7 | 2/11/04 | Xanax (90 pills) | 631 Stanton Lane<br>Weston, FL |
| 8 | 3/1/04 | Phentermine (30 pills) | 614 Orems Road<br>Baltimore, MD 21221 |
| 9 | 3/5/04 | Ambien (30 pills)<br>Viagra (15 pills)<br>Lipitor (30 pills) | 7234 Muncaster Mill<br>Road, #536<br>Derwood, MD 20855 |
| 10 | 4/17/04 | Viagra (15 pills) | 20410 40th Ave. Ct. E<br>Apt 1A<br>Spanaway, WA 98387-6704 |
| 11 | 5/12/04 | Ambien (30 pills) | 1318 Calder Road<br>Key Largo, FL 33037 |
| 12 | 5/14/04 | Phentermine (30 pills) | 1318 Calder Road<br>Key Largo, FL 33037 |
| 13 | 5/12/04 | Ambien (60 pills)<br>Viagra (60 pills)<br>Lipitor (60 pills) | 7731 Tuckerman Lane,<br>#164<br>Potomac, MD 20854 |

in violation of Title 18, United States Code, Sections 1341 and 2.

### COUNTS FOURTEEN THROUGH TWENTY-THREE
### (21 U.S.C. § 331)
### (Introduction of unapproved new drugs)

49.    The Grand Jury realleges and incorporates by reference herein, Paragraphs 1 through 42 of this Indictment.

50.    On or about the dates set forth below in Column A, in the Northern District of Georgia and elsewhere, defendants

27

JARED ROBERT WHEAT
STEPHEN D. SMITH
TOMASZ HOLDA
SERGIO OLIVEIRA
DAVID BRADY
DAVID JOHNSON
MICHELE YOUNG
GUILLERMO PECH
HI-TECH PHARMACEUTICALS, INC.,
d/b/a Planet Pharmacy, Target
Data, Target Data Processing,
Pegasus Resources, Global
Pharmacy and Generic Limited

aided and abetted by each other and others known and unknown to the
Grand Jury, with intent to defraud and mislead, did introduce and
deliver for introduction and cause the introduction and delivery
for introduction into interstate commerce unapproved new drugs
identified in Column B, said drugs being introduced into interstate
commerce from Belize:

| | A | B |
|---|---|---|
| COUNT | DATE OF MAILING | PURPORTED PHARMACEUTICALS |
| 14 | 8/8/02 | Viagra (15 pills) |
| 15 | 2/11/04 | Phentermine (30 pills) |
| 16 | 2/11/04 | Phentermine (30 pills) |
| 17 | 2/11/04 | Xanax (90 pills) |
| 18 | 3/1/04 | Phentermine (30 pills) |
| 19 | 3/5/04 | Ambien (30 pills)<br>Viagra (15 pills)<br>Lipitor (30 pills) |
| 20 | 4/17/04 | Viagra (15 pills) |
| 21 | 5/12/04 | Ambien (30 pills) |
| 22 | 5/14/04 | Phentermine (30 pills) |
| 23 | 5/12/04 | Ambien (60 pills)<br>Viagra (60 pills)<br>Lipitor (60 pills) |

28

in violation of Title 21, United States Code, Sections 331(d), 333(a)(2), 355(a), and Title 18, United States Code, Section 2.

### COUNTS TWENTY-FOUR THROUGH THIRTY-THREE
### (21 U.S.C. § 331)
### (Introduction of adulterated drugs)

51.   The Grand Jury realleges and incorporates by reference herein, Paragraphs 1 through 42 of this Indictment.

52.   On or about the dates set forth below in Column A, in the Northern District of Georgia and elsewhere, defendants

**JARED ROBERT WHEAT**
**STEPHEN D. SMITH**
**TOMASZ HOLDA**
**SERGIO OLIVEIRA**
**DAVID BRADY**
**DAVID JOHNSON**
**MICHELE YOUNG**
**GUILLERMO PECH**
**HI-TECH PHARMACEUTICALS, INC.,**
**d/b/a Planet Pharmacy, Target**
**Data, Target Data Processing,**
**Pegasus Resources, Global**
**Pharmacy and Generic Limited**

aided and abetted by each other and others known and unknown to the Grand Jury, with intent to defraud and mislead, did introduce and deliver for introduction and cause the introduction and delivery for introduction into interstate commerce adulterated drugs identified in Column B, said drugs being introduced into interstate commerce from Belize:

29

| A. COUNT | DATE OF MAILING | B. PURPORTED PHARMACEUTICALS |
|---|---|---|
| 24 | 8/8/02 | Viagra (15 pills) |
| 25 | 2/11/04 | Phentermine (30 pills) |
| 26 | 2/11/04 | Phentermine (30 pills) |
| 27 | 2/11/04 | Xanax (90 pills) |
| 28 | 3/1/04 | Phentermine (30 pills) |
| 29 | 3/5/04 | Ambien (30 pills) Viagra (15 pills) Lipitor (30 pills) |
| 30 | 4/17/04 | Viagra (15 pills) |
| 31 | 5/12/04 | Ambien (30 pills) |
| 32 | 5/14/04 | Phentermine (30 pills) |
| 33 | 5/12/04 | Ambien (60 pills) Viagra (60 pills) Lipitor (60 pills) |

in violation of Title 21, United States Code, Sections 331(a), 333(a)(2), 351(a)(2)(A, B), and Title 18, United States Code, Section 2.

### COUNTS THIRTY-FOUR THROUGH FORTY-ONE
#### (21 U.S.C. § 952)
#### (Importation of Controlled Substances)

53.   The Grand Jury realleges and incorporates by reference herein, Paragraphs 1 through 42 of this Indictment.

54.   On or about the dates set forth below in Column A, in the Northern District of Georgia and elsewhere, defendants

30

JARED ROBERT WHEAT
STEPHEN D. SMITH
TOMASZ HOLDA
SERGIO OLIVEIRA
DAVID BRADY
DAVID JOHNSON
MICHELE YOUNG
GUILLERMO PECH
HI-TECH PHARMACEUTICALS, INC.,
d/b/a Planet Pharmacy, Target
Data, Target Data Processing,
Pegasus Resources, Global
Pharmacy and Generic Limited

aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly, intentionally and unlawfully import into the United States, from a place outside thereof, the Schedule IV controlled substances identified in Column B:

| | A | B |
| COUNT | DATE OF MAILING | PURPORTED PHARMACEUTICALS |
| --- | --- | --- |
| 34 | 2/11/04 | Phentermine (30 pills) |
| 35 | 2/11/04 | Phentermine (30 pills) |
| 36 | 2/11/04 | Xanax (90 pills) |
| 37 | 3/1/04 | Phentermine (30 pills) |
| 38 | 3/5/04 | Ambien (30 pills) |
| 39 | 5/12/04 | Ambien (30 pills) |
| 40 | 5/14/04 | Phentermine (30 pills) |
| 41 | 5/12/04 | Ambien (60 pills) |

in violation of Title 21, United States Code, Sections 952(a)(2), 960(a)(1), and 960(b)(4), and Title 18, United States Code, Section 2.

31

## COUNT FORTY-TWO
### (21 U.S.C. § 331)
### (Introduction of Adulterated Drugs)

55.  The Grand Jury realleges and incorporates by reference herein, Paragraphs 1 through 42 of this Indictment.

56.  On or about April 12, 2004, in the Northern District of Georgia and elsewhere, defendants

**JARED ROBERT WHEAT**
**STEPHEN D. SMITH**
**TOMASZ HOLDA**
**SERGIO OLIVEIRA**
**DAVID BRADY**
**DAVID JOHNSON**
**MICHELE YOUNG**
**GUILLERMO PECH**
**HI-TECH PHARMACEUTICALS, INC.,**
**d/b/a Planet Pharmacy, Target**
**Data, Target Data Processing,**
**Pegasus Resources, Global**
**Pharmacy and Generic Limited**

aided and abetted by each other and others known unknown to the Grand Jury, with intent to defraud and mislead, did introduce and deliver for introduction and cause the introduction and delivery for introduction into interstate commerce adulterated drugs, to wit 18 envelopes containing 1,318 Viagra pills, said drugs being imported from Belize, in violation of Title 21, United States Code, Sections 331(a), 333(a)(2), 351(a)(2)(A, B), and Title 18, United States Code, Section 2.

32

## COUNTS FORTY-THREE THROUGH FORTY-FIVE
### (18 U.S.C. § 1343)
### (Wire Fraud)

57.  The Grand Jury realleges and incorporates by reference herein, Paragraphs 1 through 42 of this Indictment.

58.  On or about the dates set forth in Column A, below, in the Northern District of Georgia and elsewhere, the defendant, JARED ROBERT WHEAT, for the purpose of executing the aforesaid scheme and artifice to defraud, did transmit and cause to be transmitted in interstate and foreign commerce, by means of a wire communication, certain signs, signals, and sounds, that is, defendant JARED ROBERT WHEAT sent fascimiles identified in Column B, below, from the Northern District of Georgia to Belize,

| COUNT | DATE | FACSIMILE |
|---|---|---|
| 43 | 5/16/02 | authorizing transfer of $30,000 from one account in Belize to another |
| 44 | 7/3/02 | authorizing transfer of $50,000 from one account in Belize to another |
| 45 | 10/7/02 | authorizing transfer of $73,960 to be wired from a bank account in Belize to a bank account in New York |

All in violation of Title 18, United States Code, Section 1343.

## CRIMINAL FORFEITURE PROVISION

59.   All of the allegations set forth in paragraphs 1 through 58 are incorporated herein by reference, as if fully restated.

60.   Upon conviction of one or more of the offenses alleged in Count 1, Counts 4 through 13, and Counts 43 through 45 of this Indictment, defendants JARED ROBERT WHEAT, STEPHEN D. SMITH, TOMASZ HOLDA, SERGIO OLIVEIRA, STEVEN BLINDER, DAVID BRADY, DAVID JOHNSON, MICHELE YOUNG, GUILLERMO PECH, DAVID WATKINS, BRAD WATKINS and HI-TECH PHARMACEUTICALS, INC., d/b/a Planet Pharmacy, Target Data, Target Data Processing, Pegasus Resources, Global Pharmacy, and Generic Limited, shall, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 981(a)(1)(D)(vi), and Title 28, United States Code, Section 2461(c), forfeit to the United States all property, real or personal, which constitutes or is derived from proceeds traceable to such offense(s).

61.   Upon conviction of the offense alleged in Count 3 of this Indictment, defendant JARED ROBERT WHEAT shall, pursuant to 21 U.S.C. § 853, forfeit to the United States any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as the result of such violation; any of the defendant's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and any of his interest in, claims against, and property

34

or contractual rights affording a source of control over, the
continuing criminal enterprise.

62. Upon conviction of one or more of the offenses alleged in
Count 2, and Counts 34 through 41 of this Indictment, defendants
JARED ROBERT WHEAT, STEPHEN D. SMITH, TOMASZ HOLDA, SERGIO
OLIVEIRA, STEVEN BLINDER, DAVID BRADY, DAVID JOHNSON, MICHELE
YOUNG, GUILLERMO PECH, DAVID WATKINS, BRAD WATKINS, and HI-TECH
PHARMACEUTICALS, INC., d/b/a Planet Pharmacy, Target Data, Target
Data Processing, Pegasus Resources, Global Pharmacy, and Generic
Limited, shall, pursuant to 21 U.S.C. § 853, forfeit to the United
States any property constituting, or derived from, any proceeds the
defendant obtained, directly or indirectly, as the result of such
violation, and any of the defendant's property used, or intended to
be used, in any manner or part, to commit, or to facilitate the
commission of, such violation.

63. The property to be forfeited includes, but is not limited
to, the following:

### (A) MONEY JUDGMENT

> A sum of money not less than
> $19,800,000 in United States
> currency, representing the amount of
> proceeds obtained as a result of the
> offenses alleged in Counts 1, 2, 3,
> 4 through 13, 34 through 43, and 45
> through 47 of this Indictment, for
> which the defendants are jointly and
> severally liable.

**(B)  REAL PROPERTY**

(1)  All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 5400 Laithbank Lane, Alpharetta, Fulton County, Georgia.

(2)  All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 5437 Vicksburg Circle, Birmingham, Jefferson County, Alabama.

(3)  All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at Vista Del Mar, Block 16, Parcel 1999, Belize.

(4)  All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at Vista Del Mar, Block 16, Parcel 2009, Belize.

(5)  All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1902 Bruce Road, Atlanta, Dekalb County, Georgia.

(6)  All that tract or parcel of land lying and being in the 8th District, 1st Section, Land Lot 1 of Fannin County, Georgia, containing 1.11 acres, more or less, and being shown as Lot 30

36

of Mountain High, Phase Two, on a plat of survey by Chastain & Associates, P.C., Mark E. Chastain, G.R.L.S. No 2718, dated December 18, 2003, and December 20, 2003, and recorded in Fannin County Records in Plat Hanger D-73, Pages 2-3, Said plat is incorporated herein, by reference hereto, for a full and complete description of the above described property.

Being and intended to be a portion of the same property conveyed by Warranty Deed dated April 28, 2004, from Mountain High Builders, LLC in favor of Ridgeview Properties, LLC and recorded in Fannin County Records in Deed Book 569, Page 270.

Grantor herein grants an easement for ingress and egress, over and across an existing roadway, to the owner of Lot 29 (as shown on of the above-referenced plat of survey), their heirs and /or assigns. Said easement shall not be a mere license, but shall be a right running with the land, and shall inure to the benefit and burden of the Grantees, the owner of Lot 29, their heirs and/or assigns.

Subject to all easements, restrictions and rights-of-way as shown on plat recorded in Fannin County Records in Plat Hanger D-73, Pages 2-3; Plat Hanger D-3, Page 8; and Plat Hanger C-200, Page 7.

37

Subject to Protective Covenants and Restrictions, Road Easements and Maintenance Agreements along with Water rights, Easements and Maintenance Agreements, for Mountain High Subdivision, Phase Two, recorded in Fannin County Records in Deed Book 563, Pages 655-58.

Subject to Water Service provision and System Maintenance and Repair Agreement and Easement for Mountain High Subdivision, Phase Two, recorded in Fannin County Records in Deed Book 563-62.

Subject Corporation Conveyance of Easement to Blue Ridge Telephone, Co., dba TDS Telecom recorded in Fannin County Records in Deed Book 552, Pages 1-3.

(7)   All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 320 Harbor Boulevard #905, Sandestin Yacht Club, Destin, Okaloosa County, Florida.

(8)   All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 9035 Moor Park Run, Duluth, Forsyth County, Georgia.

(9)   All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and

38

easements, located at 1870
Noblin Ridge Trail, Duluth,
Gwinnett County, Georgia.

(10) All that lot or parcel of land,
together with its buildings,
appurtenances, improvements,
fixtures, attachments and
easements, located at 55 Laurel
Rd, Pinehurst, Moore County,
North Carolina.

(11) TRACT 1: Being Lot 1 as shown
on a map entitled, "Division of
Lois McKenzie Estate, Mineral
Spring Township, Moore County,
North Carolina, dated August
1993, and prepared by American
Surveying and Mapping West End,
North Carolina, said Lot being
more particularly described as
follows: Beginning at an
existing iron stake, Located
27.2 feet from the centerline
of N.C.S.R. 1224 (Doubs Chapel
Road), and also being the
Northeastern corner of the
Toole property as described in
Book 431, Page 325, Moore
County Registry, and running
thence South 71 degrees 39
minutes East 175.00 feet to a
New Iron Stake, being the
northwest corner of Lot 2
containing 36.78 Acres as
described below: the South 18
degrees 13 minutes West 241.85
feet to a new iron stake;
thence continuing with Lot 2
property line south 15 degrees
00 minutes east 442.55 feet to
a new iron stake; thence
continuing with Lot 2 property
line south 64 degrees 57
minutes west 536.04 feet to an
existing iron stake and oak
PTR, said stake being the south
corner of the Toole property,

39

thence north 16 degrees 38 minutes east 980.25 feet to the point and place of beginning, containing 5.06 acres, more or less, and being all of Lot 1 according to that certain map referred to above.

TRACT TWO: Being Lot 2 as shown on a map entitled, "division of Lois McKenzie Estate, Mineral Springs Township, Moore County, North Carolina," dated August 31, 1993 and prepared by America Surveying and Mapping, West End, North Carolina, and lying on the south side of N.C.S.R. 124 (Doubs Chapel Road), adjoining Lots 1 and 3 of the division, Cain, Ritter, McCloud heirs and possible other and being more particularly described as follows: Beginning at an existing Iron Stake and Oak Pointer, said stake being the southeastern most corner of the Laton property located in Book 653, Page 414, Moore County Registry, and running thence with the Cain property line in Book 772, Page 380 south 17 degrees 15 minutes east 1,181.04 feet to an existing iron stake by a tall iron pipe, said stake being the northeastern most corner of the Michael S. Ritter Property, thence south 17 degrees 15 minutes east 710 feet to an existing iron stake and Lightwood Knot by a tall iron pipe and Gumpointer and being the southeastern most corner of the Michael S. Ritter property, thence south 77 degrees 09 minutes east 544.54 feet to a

New iron stake being the southwester most corner of Lot 3 of this division, thence north 8 degrees 23 minutes west 1,914.55 feet to a New Iron Stake, said Stake, said stake being located in the property line of Lot 3; thence north 1 degree 11 minutes east 798.73 feet to a New Iron Stake; thence North 1 degree 11 minutes East 28.82 feet to a New Iron Stake being the Northwesternmost corner of Lot 3 being Located in N.C.S.R. 1224 (Doubs Chapel Road); thence north 76 degrees 07 minutes west minutes west 97.92 feet to a New Iron Stake, said stake being 14.0  feet from the centerline of N.C.S.R. 1224 (Doubs Chapel Road); thence North 71 degrees 39 minutes west 26.46 feet to a New Iron stake, said stake being located 14.7 feet from the centerline of N.C.S.R. 1224 (Doubs Chapel Road)  and  being  the northeastern most corner of lot 1; thence south 18 degrees 13 minutes west 241.85 feet to a new iron stake; thence south 15 degrees 00 minutes east 442.55 feet to a new iron stake; thence south 64 degrees 57 minutes wet 536.04 feet to an existing iron stake, the point and place of beginning and containing 36.78 acres more or less and being designated as lot 2 on a Map referred to above.

TRACT THREE:  Being Lot 3 as shown on a map entitled, "Division of Lois McKenzie Estate, Mineral Springs Township, Moore County, North

41

Carolina, " Dated August 31, 1993, and prepared by America Surveying and Mapping, west end, North Carolina, said Lot being more particularly described as follows: Beginning at an existing LW Knot on the Southeast Bank of Branch, Poplar and Oak Pointers, the same being the southwesternmost corner of the W. R. Moore Land as described in Book 152, Page 167 and running thence north 71 degrees 40 minutes east 437.52 feet to an existing Iron Pipe at a burned lightwood Stake, said pipe being located in the W.R. Moore property line, thence south 9 degrees 45 minutes west 1,0209.60 feet to a new iron stake being located in the McKenzie Heirs property in book 68, Page 76, Moore County Registry, thence North 77 degrees 09 minutes west 848.06 feet an iron stake, said Stake being a common corner with Lot 2, of this division, continuing North 8 degrees 23 minutes west 1,914.55 feet to a new iron stake; thence north 1 degree 11 minutes east 798.73 feet to a new iron stake; thence north 1 degree 11 minutes east 28.82 feet to a new iron stake, said stake being the Northeasternmost corner of Lot 2 and being located in the centerline of N.C.S.R. 1224 (Doubs Chapel Road); Thence 79 degrees 06 minutes east 367.75 feet to a New Iron Stake; thence south 20 degrees 36 minutes west 30.40 feet to an existing iron stake; thence south 20 degrees 36 minutes west 203.73 feet to an existing

iron stake; thence south 80 degrees 00 minutes east 462.80 feet to an existing concrete monument, being a common corner with the cemetery lot as located in Book 22, Page 593, Moore County Registry; thence south 3 degrees 37 minutes East 90.30 feet to an existing iron stake; thence with the western property line of the W.R. Moore Land located in Book 152, Page 167, Moore County, Registry; thence south 3 degrees 55 minutes East 1,577.45 feet to the point and place of Beginning, and containing 49.02 acres more or less and being designated as lot 3 on the Map referred to above.

(12)   Condominium unit #2804 of the Spire Midtown condominium development, located at 860 Peachtree Street, Atlanta, Fulton County, Georgia.

(13)   All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, commonly known as the Signature Place Office Building, located at 5909 Northwest Expressway Street, Oklahoma City, Oklahoma County, Oklahoma.

(14)   All that tract or parcel of land lying in Land Lot 69, 26th District, 2nd Section, Gilmer County, Georgia, containing 35.63 acres, more or less, as shown on a plat of survey for Ruth James, prepared by Donald O. Babb, RLS #2029, dated September 24, 1991, and recorded in Plat Book 20, page

43

237, Gilmer County Records, to
which reference is made for a
complete and accurate legal
description.

(15) All that tract or parcel of
land lying in Land Lot 76, 26th
District, 2nd Section, Gilmer
County, Georgia, containing
26.39 acres, more or less, as
shown on a plat of survey for
Ronald May, prepared by Donald
O. Babb, RLS #2029, dated
November 11, 1994, and recorded
in Plat Book 24, page 236,
Gilmer County Records, to which
reference is made for a
complete and accurate legal
description.

(16) All that tract or parcel of
land lying in Land Lots 70 and
75, 26th District, 2nd Section,
Gilmer County, Georgia,
containing 68.30 acres, as
shown on a plat of survey for
Ronald May, prepared by William
J. Bouldin, RLS #2566, dated
October 17, 1994, and revised
on August 20, 1997, and
recorded in Plat Book 29, page
171, Gilmer County Records, to
which reference is made for a
complete and accurate legal
description, and subject to all
roads and other matters shown
thereon. This conveyance is
subject to the following
restrictions: (a) No
commercial chicken houses shall
be constructed. (b) No mobile
home parks shall be allowed.
(c) No accumulated junk or
abandoned vehicles shall be
allowed.

AND ALSO all that tract or
parcel of land lying in Land

Lots 39, 40 & 69, 26th District, 2nd Section, Gilmer County, Georgia, containing 13.55 acres, as shown on survey for Helen Barnes, prepared by Donald O. Babb, RLS #2029, dated December 9, 1992, and recorded in Plat Book 22, page 215, Gilmer County Records, to which reference is made for a complete and accurate legal description; together with all improvements, fixtures, shrubbery, including a single-family residence and appurtenances thereto.

AND ALSO all that tract or parcel of land lying in Land Lots 40 & 69, 26th District, 2nd Section, Gilmer County, Georgia, containing 3.10 acres, and designated as Tract "B, as shown on survey dated April 15, 1999, and recorded in Plat Book 33, page 45, Gilmer County Records.

(17) All that tract of land lying in Land Lots 75 and 76, 26th District, 2nd Section, Gilmer County, Georgia, containing 76.3 acres, as shown on a plat of survey for Ronald May, prepared by Donald O. Babb, RLS #2029, dated May 9, 1996, and recorded in Plat Book 27, page 7, Gilmer County Records, to which reference is made for a complete and accurate legal description.

Also conveyed is non-exclusive easement for ingress and egress and installation, maintenance and repair of utilities over, under and across a 60-foot right-of-way, a portion of

45

which is shown on the above
plat as "60' Easement to Tails
Creek Road".

Also conveyed is non-exclusive
easement for access and
utilities, 40 feet in width,
running from a tract containing
26.39 acres previously conveyed
to Grantee by deed recorded in
Deed Book 592, page 105,
records aforesaid, in a
southwesterly direction across
lands of Grantor, staying as
close as practicable to the
northerly line of said adjacent
land, to the above-described
property. Once constructed,
the road centerline shall
become the centerline of this
easement.

This conveyance is subject to
the following restrictions:
(a) No commercial chicken
houses shall be constructed on
subject property. (b) No
mobile home parks shall be
allowed. (c) No accumulated
junk or abandoned vehicles
shall be allowed.

**(C) BANK ACCOUNTS AND OTHER INVESTMENT ACCOUNTS**

(1) All funds credited to account
#544739727, in the name of
Trust Services, at Banco
Continental de Panama, SA.

(2) All funds credited to account
#1000346974365, in the name of
Jared Robert Wheat, at Wachovia
Bank.

(3) All funds credited to account
#2000127489609, in the name of
Hi-Tech Pharmaceuticals, Inc.,
at Wachovia Bank.

(4)   All funds credited to account #2000127485098, in the name of Natl Inst for Clinical Weight Loss, at Wachovia Bank.

(5)   All funds credited to account #2000127489719, in the name of National Urological Group at Wachovia Bank.

(6)   All funds credited to account #70B17154, in the name of Jared R. Wheat, at Merrill Lynch.

(7)   All funds credited to account #70B86197, in the name of Jared R. Wheat, at Merrill Lynch.

(8)   All funds credited to account #70B85713, in the name of Jared R. Wheat, at Merrill Lynch.

(9)   All funds credited to account #891-58Q07, in the name of Stephen D. Smith, at Merrill Lynch.

(10)  All funds credited to account #646016399, in the name of Stephen D. Smith, at Morgan Stanley.

(11)  All funds credited to account #24003998, in the name of Stephen D. Smith at Cornerstone Bank.

(12)  All funds credited to account #1010105934358, in the name of Stephen D. Smith, at Wachovia Bank.

(13)  All funds credited to account #1000092992947, in the name of Stephen D. Smith, at Wachovia Bank.

(14) All funds credited to account #1126754, in the name of Stephen D. Smith, at Gainesville Bank & Trust.

(15) All funds credited to account #5145144835, in the name of Tomasz Holda, at BB & T.

(16) All funds credited to account #2AS22D23, in the name of Tomasz Holda, at Merrill Lynch.

(17) All funds credited to account #70B17669, in the name of Tomasz Holda, at Merrill Lynch.

(18) All funds credited to account #70B86196, in the name of Tomasz Holda, at Merrill Lynch.

(19) All funds credited to account #00684863511, in the name of David A. Brady, Jr., at Bank of America.

(20) All funds credited to account #U307247, in the name of David A. Brady, Jr., at Interactive Brokerage, LLC.

(21) All funds credited to account #247387, in the name of Felony Records, at Gainesville Bank & Trust.

(22) All funds credited to account #14087264, in the name of Global Financial, at Wachovia Bank.

(23) All funds credited to account #2000021062041, in the name of A Touch of Class Interior Design, at Wachovia Bank.

(24) All funds credited to account #280776132001, in the name of

48

Ochlocknee Ventures, LLC, d/b/a Moe's Southwest Grill, at The National Bank of Carolina.

(25) All funds credited to account #267419, in the name of Monster Graffix, at Gainesville Bank & Trust.

(26) All funds credited to account #249722, in the name of Monster Graffix, at Gainesville Bank & Trust.

(27) All funds credited to account #1002295, in the name of PBS Investment Group, LLC, at Atlanta Business Bank.

(D) **CONVEYANCES**

(1) 2003 Jaguar ST8R, VIN SAJDA03V231M63431.

(2) 2001 Jaguar S-Type, VIN SAJDA01N51FL95883.

(3) 2000 Mercedes-Benz S430, VIN WDBNG70J4YA045952.

(4) 1999 Mercedes-Benz ML 430, VIN 4JGAB72E7XA90800.

(5) 2000 Ferrari 360 Modena F, VIN ZFFYR51B000119410.

(6) 2001 Ford Expedition, VIN 1FMRU17W51LA38461.

(7) 1998 Mercedes-Benz E430, VIN WDBJF70F3WA635005.

(8) 2002 Mercedes-Benz, VIN WDBNG75J42A246699.

(9) 2004 Hummer H2, VIN 5GRGN23U74H114299.

49

(10) 1999 Lincoln Town Car, VIN 1L1FM81W5XY677831.

(11) 1999 Porsche Carrera, VIN WPOCAZ996XS653034.

(12) 1996 Fountain Boat, Vessel HIN: FGQ35330L596, Official NO 1057358.

(13) 1999 Lexus LX 470, VIN JT6HT00W3X0057874

(14) 2000 Porsche 911, VIN WPOAA2992YS821254.

(15) 2006 Maserati Quattroporte, VIN ZAMCE39A460024317.

64.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

(A)    cannot be located upon the exercise of due diligence;

(B)    has been transferred or sold to, or deposited with, a third party;

(C)    has been placed beyond the jurisdiction of the Court;

(D)    has been substantially diminished in value; or

(E)    has been commingled with other property which cannot be divided without difficulty;

50

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

A _____ _____ BILL

_____
FOREPERSON


DAVID E. NAHMIAS
UNITED STATES ATTORNEY


AARON M. DANZIG
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 205151


RANDY S. CHARTASH
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 121760


J. RUSSELL PHILLIPS
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 576335

600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
404/581-6000
404/581-6181 (fax)